# TABLE OF CONTENTS

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS

I. Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II. Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

      A.     McBride & Collier Have Print, Internet and Television Advertisements
              Approved by the Louisiana State Bar Association That Inform The Public
              of Their Willingness To Do "No Money Down" Chapter 13 Bankruptcies . . . . . 3

      B.     By Email Judge Stephen V. Callaway Directed That The Advertising
              Must End And That The Fees of Attorneys Filing For and Representing
              Large Numbers of Debtors Will Be Reduced . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

      C.     Judge Callaway Implements His Email Via Two Standing Orders Entered
              November 30, 2009 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

      D.     McBride & Collier Face a Loss of First Amendment Freedoms
              and Pecuniary Damage . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

III. Law and Argument . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

          A.     Judge Callaway's Standing Orders Were Outside His Authority . . . . . . . 6

          B.     Judicial and Sovereign Immunity are Inapplicable to this Case . . . . . . . 7

          C.     The Instant Lawsuit Presents a Case or Controversy For Purposes
              of Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

          D.     This Court Has Subject Matter Jurisdiction . . . . . . . . . . . . . . . . . . . . . . . 14

          E.     Personal Jurisdiction and Service of Process . . . . . . . . . . . . . . . . . . . . . . 15

          F.     The Court May Enter Injunctive Relief . . . . . . . . . . . . . . . . . . . . . . . . . . 15

IV. Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

# TABLE OF AUTHORITIES

## <u>CASES</u>

4 Keith M. Lundin, Chapter 13 Bankruptcy,
    sec 294.1, at p. 294-22 to 23 (3d ed. 2000 & Supp. 2004) . . . . . . . . . . . . . . . . . . . . . . . 14

*A.O. Smith Corp. Vs. FTC*,
    530 F.2nd 515, 525-526 (3rd. Cir. 1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Allstate Insurance Company v. Abbott*,
    495 F.3d 151, 158 (5th Cir. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Citizens United V. Federal Election Commission*,
    558 U. S. ____ (2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2, 10

*Citizens United vs. Federal Election Commission*,
    558 U. S. ____ (2010), at p. 31 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Cohn v. Brown*, 161 Fed.Appx.,
    450 (6th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 13

*Compensation of Professionals--Compensation in Chapters 12 and 13* . . . . . . . . . . . . . . . . . . . . 3

*Elrod v. Burns*,
    427 U.S. 347, at 373-374 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Federal Election Commission vs. Wisconsin Right to Life*,
    551 U. S. 449, 470 (2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Heck vs. Bolls*,
    321 U.S., 329 (1943) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*In re Cahill*,
    452 F. 3d 536, 541 (5th Cir. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*In re Eliapo*,
    468 F.3d 592 (9th Cir. 2006) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*In re Gulf States Steel, Inc. of Alabama*,
    285 B.R. 739, (Bkrtcy.N.D.Ala.,2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*In re Jones*, ___ B.R.____,
      2009 WL 3268668 (Bkrtcy.E.D.La.,2009) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Oxford Management, Inc.*,
      4 F.3d 1329, 1333 (5th Cir.1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*In re Standing Order with Reasons Regarding Objections to the discharge*
      *under 11 U.S.C. § 727* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 12, 17

*Larson vs. Domestic and Foreign Commerce Corp.*,
      377 U.S. 682 (1949) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5, 9

*Lujan v. Defenders of Wildlife*,
      504 U.S. 555, 560 (1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 17

*Matter of Smith*,
      21 F.3d 660 (5th Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Micone v. Carey*,
      203 Fed.Appx. 23 (9th Cir. 2006), at p. 24 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*National Treasury Employees Union v. U.S.*
      927 F.2d 1253(D.C. Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*New York Times Co. v. United States*,
      403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971) . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Northern Pipeline Construction Company vs. Marathon Pipeline Company*,
      458 U.S. 50 (1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Offensiveness, the New Standard for First Amendment Legal Advertising Cases:*
*Florida Bar V. Went for It, Inc.*
      40 Vill. L. Rev. 1209 (1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*Opticians Association of America vs. Independent Opticians of America*,
      920 F.2nd 187, 197 (3rd. Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Paulsen v. County of Nassau*,
      925 F.2d 65 (2nd Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Pennsylvania v. West Virginia*,
      262 U.S. 553, 593 (1923) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Philadelphia Company vs. Stimson,*
    223 U.S. 605, 620 (1912) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Proported Settlement of Actions,*
    272 B.R. 917(BKRtcy. W.D. La.2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6, 7, 12, 17

*Pulliam vs. Allen,*
    466 U.S. 522(1984) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*United States v. Sutton,*
    786 F.2d 1305, 1308 (5th Cir.1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*United States vs. Hayes,*
    515 U.S. 737, 742-43(1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*United States vs. Playboy Entertainment Group, Inc.,*
    529 U. S. 803, 813 (2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

*United States vs. Price,*
    688 F.2nd 204, 211(3rd. Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*University of Texas vs. Camenisch,*
    451 U.S. 390, 395 (1981) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Virginia Pharmacy Bd. v. Virginia Consumer Council,*
    425 U.S. 748 (1976) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

## **STATUTES**

11 U.S.C. § 105 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11 U.S.C. § 105(a) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

11 U.S.C. § 330 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

28 U.S.C. § 1334 and § 157 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7,14

28 U.S.C. § 1343 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

28 U.S.C. § 158 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**<u>OTHER</u>**

Federal Rule of the Civil Procedure 4(I) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

Local Civil Rule 83.2.4 (w) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Louisiana State Bar Association, see Rules 1.8 (e) and 7.7
       of the Rules of Professional Conduct for the Louisiana State Bar Association  . . . . . . . . 3

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION**

MCBRIDE & COLLIER                                    CIVIL CASE NO. 09-cv-1955

VS.

JUDGE STEPHEN V. CALLAWAY


**MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS**

**MAY IT PLEASE THE COURT**

McBride and Collier, Attorneys at Law, a Partnership of Thomas McBride, Esq., and Glay

Collier, Esq., (sometimes hereinafter "Plaintiffs" or "McBride & Collier"), represented herein by

undersigned counsel, respectfully submit this memorandum in opposition to the Motion to Dismiss

filed by the United States.

## I.  Introduction

On October 23, 2009, McBride & Collier received an email from Judge Stephen V. Callaway

indicated that "No Money Down" advertising must end "A.S.A.P." and further asserting all the

bankruptcy judges of the Western District agreed with his dictate.  A copy of this email is attached

to the Complaint as Exhibit "B."  This email reveals the intent behind the standing order at issue in

this matter.  The complained of orders were issued a little more than a month after the email. [1] That

the standing orders were not meant to squelch the free speech of McBride & Collier and that

---

[1] As stated *infra* on November 30, 2009 Judge Callaway entered two standing orders: "Standing Order
Regarding Reimbursement Of Fees or Expenses Advanced by Debtor Counsel From Chapter 13 Bankruptcy Estate
for Chapter 13 Cases filed in the Shreveport and Monroe Divisions Of the Western District of Louisiana" and
"Standing Order Regarding Utilization of A 'No Look Fee with Sliding Scale' for Chapter 13 Cases filed in the
Shreveport and Monroe Divisions Of the Western District of Louisiana."  These Standing Orders are attached to the
Complaint as Exhibits "C" and "D."

1

McBride & Collier are free to continue advertise is naive and ignores reality.  Another ruse put forth by the United States[2] in its motion to dismiss is  that McBride and Collier have suffered no harm. As discussed below, McBride & Collier face monetary harm and a chilling effect on their First Amendment rights.

On January 21, 2010 the United Supreme Court issued its decision in *Citizens United V. Federal Election Commission*, 558 U. S. ____ (2010).  In *Citizens* the court heralds and stresses the preeminence of First Amendment protection.  The court states: "**Premised on mistrust of governmental power, the First Amendment stands against attempts to disfavor certain subjects or viewpoints**." (emphasis added), *Citizens United vs. Federal Election Commission*, 558 U. S. ____ (2010), at p. 31,  citing, *United States vs. Playboy Entertainment Group, Inc.*, 529 U. S. 803, 813 (2000).  The standing orders are an exercise of governmental power. " Courts, too are bound by the First Amendment." *Citizens* at p. 9.  The court also re-states the basic premise that "'**First Amendment freedoms need breathing space to survive**.'" citing *Federal Election Commission vs. Wisconsin Right to Life*, 551 U. S. 449, 470 (2007), at 468–469. McBride and Collier's First Amendment Freedoms have been suffocated.

## II.  Facts

Plaintiffs work primarily as counsel for debtors in bankruptcy filing under Chapter 13 of the Bankruptcy Code.  Almost all of their business is from and in the parishes comprising the Western District of Louisiana.  Like most businesses, Plaintiffs advertise their services.[3]  Like most attorneys

---

[2] The instant Motion to Dismiss has been filed on behalf of the "United States."  However, the United States is a non-party to these proceedings

[3] "[D]uring the 1850's, Abraham Lincoln used advertising and solicitation to obtain clients," Tara L. Lattomus, *Offensiveness, the New Standard for First Amendment Legal Advertising Cases: Florida Bar V. Went for It, Inc.* 40 Vill. L. Rev. 1209 (1995), at p. 1214.

2

working mainly for Chapter 13 debtors, Plaintiffs' business is a high volume one, meaning they represent many debtors and file many cases.[4]

**A.      McBride & Collier Have Print, Internet and Television Advertisements Approved by the Louisiana State Bar Association That Inform The Public of Their Willingness To Do "No Money Down" Chapter 13 Bankruptcies**

Earlier this year McBride & Collier began new print, internet, and television advertisements asserting the terms they were willing to offer potential clients.   In accord with the new rules promulgated by the Louisiana State Bar Association, see Rules 1.8 (e) and 7.7 of the Rules of Professional Conduct for the Louisiana State Bar Association which are made applicable to Federal District Courts in this District pursuant to Local Civil Rule 83.2.4 (w), McBride & Collier had their advertisements pre-approved by the Louisiana State Bar Association.  These approvals are attached to the Complaint as Exhibit "A."  These approved advertisements apprise the public that Plaintiffs are willing to aid those in dire circumstances by advancing costs in connection with the filing of a Chapter 13 Bankruptcy, in essence a "No Money Down" Chapter 13 Bankruptcy.

**B.      By Email Judge Stephen V. Callaway Directed That The Advertising Must End And That The Fees of Attorneys Filing For and Representing Large Numbers of Debtors Will Be Reduced**

On October 23, 2009, McBride & Collier received an email from Judge Stephen V. Callaway indicating that "No Money Down" Advertising must end "A.S.A.P."   A copy of this email is attached to the Complaint as Exhibit "B."   The e-mail from Judge Stephen Callaway further states that the "No Look" fees allowed Chapter 13 counsel will likely be reduced as the number of cases

---

[4]That representing debtors in Chapter 13 bankruptcies is often a high volume practice was noted in *Compensation of Professionals--Compensation in Chapters 12 and 13*  Bankruptcy Law Manual § 4A:40 (5th ed. 2009), ("In practice, the treatment of fees for attorneys of the debtor in Chapter 13 cases departs from a normal lodestar analysis. **Because Chapter 13 is often a high volume practice**, most courts have instituted local rules which establish no-look fees.")(emphasis added).

filed by an individual lawyer increases.

Since the plan set forth in the email directly and greatly affects Plaintiffs' livelihood and as the directive on advertising is violative of Plaintiffs' rights of free speech, Plaintiffs filed a " Motion Seeking Relief from Potential Prohibitions on Chapter 13 Attorney Advertising and Potential Reductions in Chapter 13 Attorney Compensation Based on the Volume of Cases Filed" and asked for a hearing en banc before all three bankruptcy judges.  This motion was dismissed as moot after Judge Callaway issued the two standing order that are the subject of the complaint.

### C.   Judge Callaway Implements His Email Via Two Standing Orders Entered November 30, 2009

On November 30, 2009 Judge Callaway entered two standing orders: "Standing Order Regarding Reimbursement Of Fees or Expenses Advanced by Debtor Counsel From Chapter 13 Bankruptcy Estate for Chapter 13 Cases filed in the Shreveport and Monroe Divisions Of the Western District of Louisiana" and "Standing Order Regarding Utilization of A 'No Look Fee with Sliding Scale' for Chapter 13 Cases filed in the Shreveport and Monroe Divisions Of the Western District of Louisiana."  These Standing Orders are attached to the Complaint as Exhibits "C" and "D."

### D.   McBride & Collier Face a Loss of First Amendment Freedoms and Pecuniary Damage

The first Standing Order, among other things, denies reimbursement costs to McBride & Collier.  The second Standing Order, in addition to creating a labyrinth of averages required to be kept and acronyms to be used, will greatly reduce fees to McBride & Collier.  Both orders present as a rationale that attorneys who advertise and handle a high volume of cases are over-compensated and are hurting smaller practitioners who don't advertise.  Both Standing Orders have the effect of

4

preventing McBride & Collier from continuing to advertise and thus chilling their commercial speech that is protected by the First Amendment.  Not only will they not be able to advertise, but they will not be able to fulfill advertising that will continue to be before the public.[5]

In addition to suffering  harm from the loss of First Amendment rights, McBride & Collier will have much pecuniary loss.  They estimate they will lose approximately $161,900.00 each month for Chapter 13 cases filed in the Shreveport division under Judge Callaway's Standing Orders.  The orders penalize and reduce McBride & Collier's fees simply based upon the number of debtors they represent.  The order makes assumptions that attorneys only work forty hour weeks, a proposition that is laughable.

### III.  Law and Argument

At the outset, the instant Motion to Dismiss has been filed on behalf of the "United States." However, the United States is a non-party to these proceedings.  As will be discussed below, this is not a suit against the United States or where the United States is a real party in interest.  Rather, the suit is premised on the fact that the defendant, Judge Stephen V. Callaway, has acted beyond the scope of his authority as the United States Bankruptcy Judge in entering the two instant standing orders.  Thus, this would not be a suit against the sovereign under the case of *Larson vs. Domestic and Foreign Commerce Corp.,* 377 U.S. 682 (1949).  However, assuming this motion was intended to be filed on behalf of the actual defendant, McBride & Collier would make the following arguments.

---

[5]While newspaper, television and internet adds can be removed, adds in phone books will continue to be before the public.

### A.     Judge Callaway's Standing Orders Were Outside His Authority

McBride & Collier question the propriety of Judge Callaway's entry of the two standing orders without authority from the United States District Court to do so.  In the case of *In re Standing Order with Reasons Regarding Objections to the discharge under 11 U.S.C. § 727 and Proported Settlement of Actions*, 272 B.R. 917(BKRtcy. W.D. La.2001), the United States District Court noted that 11 U.S.C. § 105 provided only limited authority to issue Standing Orders, so long as they were not contrary to the Bankruptcy Code or Rules. *Id.* at p.922 - 923.  Additionally, the Court noted that the Federal Rule of Bankruptcy procedure 9029 vests in the United States District Court the ability to make local bankruptcy rules, rather than the United States Bankruptcy Court, unless the District Court delegates such powers to the Bankruptcy Court.  *Id* at p. 923-924.  Furthermore, the Court took issue with the lack of authority for the issuance of the standing order in that case:

> Having eliminated Rule 7041 of the Bankruptcy Rules as the correct storehouse of authority to issue the instant Standing Order, another possible source is 11 U.S.C. § 105. Though the Bankruptcy Court does not cite this section in the Standing Order, we raise the issue sua sponte. Section 105(a) authorizes bankruptcy courts to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a). While the scope of Section 105(a) appears to be quite broad, we decline the temptation to sanction the standing order under this provision.
>
> The Fifth Circuit has made clear that **Section 105(a) "does not authorize the bankruptcy courts to create substantive rights that are otherwise unavailable under applicable law, or constitute a roving commission to do equity."** *In re Oxford Management, Inc.*, 4 F.3d 1329, 1333 (5th Cir.1993) (quoting *United States v. Sutton*, 786 F.2d 1305, 1308 (5th Cir.1986)). Moreover, a bankruptcy court cannot use its equity powers under Section 105(a) to negate substantive rights or remedies.

Like the standing order in that case, there is a lack of properly cited authority for Judge Callaway's issuance of his Standing Orders.  Their plain reading indicates he did mean for them to be a "roving commission to do equity" which is something precisely not allowed.  As shown in the quote above this is not a part of the general authority granted by 11 U.S.C. § 105. See also *In re Jones*, ___

6

B.R.____, 2009 WL 3268668 (Bkrtcy.E.D.La.,2009).  Also the Standing Orders cite no authority for their issuance; nor did were they directed to be issued by this Court.

As explained in *In re Standing Order with Reasons Regarding Objections to the Discharge Under 11 U.S.C. § 727 and Proported Settlement of Actions*, as a unit of the District Court, the Bankruptcy Court is subject to the supervisory jurisdiction of the Court from which all bankruptcy matters are referred.  McBride & Collier suggest that as the authority for standing orders belongs to this Court, this Court has the power to review what is effectively its own Standing Orders entered pursuant to an order of reference by this Court to the Bankruptcy Court.

McBride & Collier note that this Court has already issued an order, dated January 25, 2010, which denies the request for a writ of prohibition as to the Standing Order Regarding Reimbursement of Fees or Expenses Advanced by Debtor Counsel from Chapter 13 Bankruptcy Estate for Chapter 13 Cases filed in the Shreveport and Monroe Divisions of the Western District of Louisiana.  McBride & Collier respectfully suggest that, only since this court has entered its order of January 25, 2010, did Judge Callaway's standing order regarding reimbursement of expenses have any validity.

**B.     Judicial and Sovereign Immunity are Inapplicable to this Case**

The movant, in suggesting that this Court cannot review Judge Callaway's standing orders on the basis of immunity, turns the entire relationship between the United States Bankruptcy Courts and the United States District Courts on its head.  Bankruptcy Courts operate as a unit of the District Court, and Bankruptcy Court jurisdiction is derivative of that of the District Court under 28 U.S.C. § 1334 and § 157, and which is also subject to the right to appeal to the District Court Bankruptcy Court decisions under 28 U.S.C. § 158, and the right to seek withdrawal over the reference of

matters to the Bankruptcy Court and have matters heard by the District Court.  Clearly, the United States Bankruptcy Courts are subordinate courts to the United States District Courts and subject to their supervision.  This structure was necessitated by the Supreme Court decision in *Northern Pipeline Construction Company vs. Marathon Pipeline Company,* 458 U.S. 50 (1982).  This Court clearly has the power to review any order entered by United States Bankruptcy Court, and has available to it, in addition to the remedies mentioned previously, the right to issue a writ of prohibition to the United States Bankruptcy Court.

The United States Supreme Court has spoken on the subject of the applicability of judicial immunity as a bar to injunctive relief such as that sought in the instant lawsuit.  In the case of *Pulliam vs. Allen*, 466 U.S. 522(1984), plaintiffs sued for relief under §1983 against a state magistrate, seeking injunctive relief to prevent plaintiffs from being jailed when they were unable to meet bail imposed by the magistrate for non jailable offenses.  The Court held collateral prospective relief against the judge was not barred by judicial immunity.  *Id* p.539.  As the Court noted "there is little support in the common law for a rule of judicial immunity that prevents injunctive relief against a judge."  The Court noted in its discussion of the issue the use of writs of prohibition in the courts of England in a similar fashion, and noted that the common law did not seek judicial immunity as a bar to use of writs of prohibition.  *Id* at p.535, 537.  The dissent even noted that the availability of the prerogative writs of mandamus and prohibition

> has nothing to do with judicial immunity.  It has long been recognized in common law that judicial immunity protects only those acts committed within the proper scope of the judge's jurisdiction, that provides not protection for acts committed in excess jurisdiction.

*Id.* at p.549.

As argued above, the entire premise of the instant law suit is that Judge Callaway acted in

excess of his jurisdiction, both statutorily and constitutionally.  As such, the doctrine of judicial immunity does not apply.

As to the doctrine of sovereign  immunity, the United States Supreme Court Case of *Larson vs. Domestic and Foreign Commerce Corp.,* 377 U.S. 682 (1949) sets out the applicability of sovereign immunity to suits against government officials.  The Court noted two instances where the doctrine of sovereign immunity will not protect a federal official from suit.  The first is

> where the officers powers are limited by statute, his actions beyond those limitations are considered individual and not sovereign actions. The officer is not doing the business which the sovereign has empowered him to do or he is doing it in a way which the sovereign has forbidden.  His actions are ultra vires his authority and therefore may be made the object of specific relief.

*Id.* at p.689-690.  The second instant in which sovereign immunity does not protect a federal official is where the action taken by the officer of the government is claimed to be unconstitutional.  As the Court stated: "here, to, the conduct against which specific relief is sought is beyond the officer's power and is therefore not the conduct of the sovereign."  The Court went on to quote Justice Hughes in the case of *Philadelphia Company vs. Stimson*, 223 U.S. 605, 620 (1912) in stating that injunctive relief "is equally applicable to a federal officer acting in excess of his authority or under an authority not validly conferred."  *Id.* at P. 690-691.  While the movant's memorandum admit that the Plaintiffs allege that their constitutional rights of free speech and due process are being violated, their memorandum does not address the foregoing case law which clearly allows suits such as the instant suit from proceeding despite the doctrines of judicial and sovereign immunity.

**C.    The Instant Lawsuit Presents a Case or Controversy For Purposes of Subject Matter Jurisdiction**

This case presents an obvious controversy which is cognizable by the Court.  Essentially, this

case involves the enactment of standing orders by the bankruptcy judge that threaten McBride & Collier's First Amendment rights under the United States Constitution and that are beyond the scope of the judge's authority. McBride & Collier will be forced to either forego their free speech rights or face financial and other consequences imposed by a judge of this court. That money and free speech are connected is basic: "All speakers, including individuals and the media, use money amassed from the economic marketplace to fund their speech." *Citizens* at p. 35.

The actions by the court will affect every single Chapter 13 bankruptcy case that they may file before the bankruptcy court. McBride & Collier would ask this Court to take judicial notice of the cases filed by McBride & Collier since the signing of those orders, and attach a PACER search of all cases filed by McBride & Collier in the Shreveport division since that date. (See Exhibit "A") This Court should also take judicial notice that requests for fees and reimbursement of expenses have been made in the cases filed, or that they will be made in due course.

The Fifth Circuit outlined the test to determine whether a court has before it a case or controversy for purposes of Article III of the Constitution, such that McBride & Collier must satisfy three criteria in order to have standing to sue:

> (1) they must show that they have suffered, or are about to suffer, an "injury in fact"; (2) "there must be causal connection between the injury and the conduct complained of"; and (3) "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision."

*Allstate Insurance Company v. Abbott*, 495 F.3d 151, 158 (5th Cir. 2007), citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). Moreover, as the United States Supreme Court has stated, "[o]ne does not have to await the consummation of threatened injury to obtain preventative relief. If the injury is certainly impending, that is enough." *Pennsylvania v. West Virginia*, 262 U.S. 553, 593 (1923). As noted in the preceding paragraph, McBride & Collier face not only violation of their

First Amendment rights but also face reduction of their fees earned in numerous Chapter 13 bankruptcy cases filed.  The injury in fact prong of the case or controversy test is satisfied.

The causal connection between McBride & Collier's injury and the conduct complained of the standing orders by the bankruptcy court is clearly obvious.  The complaint pleads the estimated monetary losses to be suffered under the standing orders.  Moreover, the actual amount can be calculated by mere application of the mathematical information contained in the standing orders and by reference to the schedule of fees required to be paid to bankruptcy clerks for filings.

Movant argues in brief that "[t]he standing orders deal only and properly with compensation and the statutory propriety of reimbursement by the court of some or all of the related fees and costs."  However, the orders present as a rationale that is meant to protect certain lawyers and law firms who are unable to compete with McBride & Collier as a result of their exercise of their free speech rights.  Judge Callaway's standing order regarding the advancement of fees and expenses states:

> The practitioners that utilize the "No Money Down" **advertising** are usually the larger filers or what is sometimes called "Mega Filers" and because of their size and volume of cases that they handle they are more financially able to advance filing fees and pay the costs of carpet advertising.  This practice has taken away a large number of cases away from the practitioners that file fewer bankruptcy cases per month and are financially unable to advance the filing fees . . . These firms are the back bone of the bankruptcy bar..."  (emphasis added)

Clearly, Judge Callaway is not merely addressing the reasonableness of fees and expenses charged by attorneys of Chapter 13 debtors, but is attempting to ensure certain lawyers have a livelihood by prohibiting through economic sanction efficiency in the practice of Chapter 13 bankruptcy law and free speech regarding a lawyer's services and his right to front expenses for a client.

The final prong of the case or controversy test for purposes of standing is redressability.

11

Movant argues that, even if the standing orders are disallowed, that McBride & Collier would still face evaluation of fee and expense requests by Judge Callaway on a "case by case" basis.  However, evaluation on a "case by case" basis was precisely what Judge Little ordered in *In re Standing Order with Reasons Regarding Objections to the discharge under 11 U.S.C. § 727 and Proported Settlement of Actions*, 272 B.R. 917 (Bkrtcy. W.D. La.2001).  In that case, this court voided a standing order that set out the basis on which the bankruptcy court would entertain settlement of denial of discharge litigation; the district court overturned these orders even though litigants were still subject to the scrutiny of the bankruptcy court when attempting to settle such cases.

The movant hangs its hat on this point of the argument on the case of *Cohn v. Brown*, 161 Fed.Appx. 450 (6th Cir. 2005), a case that requested mandamous relief against bankruptcy judges regarding attorney compensation.  In that case, the appellate court set out the precise defects in the plaintiff's case:

> "In order to find that *Cohn* is under threat of imminent injury, we would have to find that (1) *Cohn* presently has cases pending in the Western District of Tennessee or is likely to bring cases there, (2) *Cohn* will be entitled to attorneys's (sic) fees in one of those cases, (3) appellees will rule inconsistently with binding precedent established by this court in *Boddy* and award attorneys' fees improperly, and (4) the award will violate *Cohn*'s rights."

*Id.* at p. 455.  Unlike *Cohn*, McBride & Collier can show each of these four facts missing in *Cohn* and therefore show imminent injury.

McBride & Collier can show the filing of cases before Judge Callaway, as is shown by the PACER attached to this Memorandum as an exhibit.  As to the entitlement of attorneys fees, in each of the cases shown on the PACER search, McBride & Collier have attached an attorneys fee addendum to the Chapter 13 Plan requesting compensation and reimbursement of expenses; certainly, Plaintiffs cannot be expected to work for free on all of these cases.  As to the prong that

requires a showing that Judge Callaway will rule inconsistently with applicable law, the standing orders are perfect evidence of how Judge Callaway intends to rule on the requests for compensation and reimbursement of expenses by McBride & Collier. It would be the Acme of foolishness to suggest that Judge Callaway did not mean what he said in those standing orders or that he would rule any differently in considering cases filed by McBride & Collier. The issuance of the standing orders was to put attorneys on notice of how Judge Callaway would to rule on fees, and sets forth a complex formula for the same. Either the standing orders comport with applicable law and the Constitution of the United States, or they do not. To suggest that this Court does not have jurisdiction to consider that question on the basis of standing defies logic. Unlike *Cohn*, Judge Callaway's policies are before this court in black and white. The final inquiry, as to whether Judge Callaway's orders will violate McBride & Collier's rights, the arguments above regarding pecuniary harm and injury to the Plaintiff's rights under the First Amendment to the Constitution of the United States are likewise clear as set forth herein.

Movants lastly argue that McBride & Collier's claims are unripe. This argument assures that Judge Callaway will rule differently than his orders provide. Moreover, the burden placed on McBride & Collier to file a formal fee application in every case is extremely burdensome. Moreover, this approach does not comport with Fifth Circuit jurisprudence on Chapter 13 attorney fees in *In re Cahill*, 452 F. 3d 536, 541 (5th Cir. 2005). In that case, the Fifth Circuit approved the use of a pre-calculated lodestar fee for a typical case. *Id.* at p.541. The Court also approved the adjustment of the same in an atypical case, that being a case with no novel or complex issues. However, Judge Callaway's standing orders effectively punish efficiency, allow smaller practitioners to charge massive sums for the exact same services and results as larger practitioners. This defied the logic of the "no look" fee. In the case of *In re Eliapo*, 468 F.3d 592 (9th Cir. 2006),

13

the court addressed the propriety of having a "no look" presumptive fee based on an estimated loadstar.  The court went on to note that efficient practitioners should not be penalized, quoting with approval a treatise on Chapter 13 stating such:

> Second, the use of presumptive fees encourages efficient use of attorney time by providing fair compensation to efficient practitioners and by preventing inefficient practitioners from passing on the cost of their inefficiency.  As stated by Judge Lundin,
>
>> Three or four hours of attorney time and a like number of hours of paralegal time in an experienced debtors' attorney's office can produce excellent results in a "typical" Chapter 13 case. Another lawyer who less regularly handles Chapter 13 cases might double or triple the time investment to produce the same or less desirable results. ***Applying normal loadstar methodology can penalize the efficient volume counsel by reducing the fee in each case while rewarding the inefficient practitioner with higher fees***. 4 Keith M. Lundin, Chapter 13 Bankruptcy, sec 294.1, at p. 294-22 to 23 (3d ed. 2000 & Supp. 2004).

(emphasis added). *Id*. at p. 599.  Use of a sliding scale for reduction of attorneys fees based on the volume of cases a lawyer files does, as stated in the treatise cited in *In re Eliapo*, penalize efficient counsel and reward inefficient lawyers.  The attorneys of McBride & Collier are efficient practitioners and we are in a time when such efficiency is needed more than ever.

### D.    This Court Has Subject Matter Jurisdiction

Movants' arguments that this Court, which has original bankruptcy jurisdiction under 28 U.S.C. §1334 and § 157, cannot take jurisdiction over the instant standing orders that will affect hundreds of pending bankruptcy cases that clearly "arise under Title 11" is ludicrous.  Moreover, these orders directly relate to the Bankruptcy Court's implementation of 11 U.S.C. § 330 which affects attorney compensation in Chapter 13 cases, and therefore, clearly "arises under Title 11." Logically, if this Court does not have jurisdiction to review these orders, then the Bankruptcy Court

was without jurisdiction to enter them in the first place. The Court therefore would have jurisdiction over the bankruptcy judge as having exceeded his jurisdiction in the first instance.

The movants' argument that 28 U.S.C. § 1343 does not provide this Court with jurisdiction likewise fails. The movants' argument is premised on sovereign immunity, which, as discussed above, is inapplicable to this particular case. The cases cited above clearly show that federal courts may issue injunctive relief against officers of the United States who exceed their statutory or constitutional authority.

### E.    Personal Jurisdiction and Service of Process

Since the filing of the Motion to Dismiss, the undersigned counsel has served Judge Stephen Callaway, the United States Attorney for the Western District of Louisiana and the Attorney General for the United States. Movants would submit that they have satisfied the requirements of Federal Rule of the Civil Procedure 4(I) and service can be shown by mere reference to the Court record.

### F.    The Court May Enter Injunctive Relief

Additionally, grounds for the issuance of a preliminary injunction are extent. Traditionally, Federal District Court has the equitable power to fashion any remedy necessary or appropriate to do justice in a particular case. *Heck vs. Bolls,* 321 U.S., 329 (1943).

> "The essence of equity jurisdiction has been the power of the chancellor to do equity and to mold each decree to the necessities of a particular case. Flexibility rather than rigidity have distinguished it. The qualities of mercy and practicality have made equity an instrument for nice adjustment and reconciliation between public interest and private needs... *Id.*

The District Court, in contemplation of exercising its traditional equitable powers, must weigh several factors to determine whether a party's request for equitable for relief should be granted. Among the factors that must be considered are: (1) the probability of irreparable damage to the non

15

moving party in the absence of relief; (2) the possibility of harm to the non-moving party if relief is granted; (3) the likelihood of success on the merits; and (4) the public interest. *United States vs. Price*, 688 F.2nd 204, 211(3rd. Cir. 1982), *A.O. Smith Corp. Vs. FTC*, 530 F.2nd 515, 525-526 (3rd. Cir. 1976). And see *In re Gulf States Steel, Inc. of Alabama*, 285 B.R. 739, (Bkrtcy.N.D.Ala.,2002) (these four factors are also considered when deciding whether to grant a stay).

Judge Callaway's Standing Orders were issued without proper authority and they traverse substantive rights of McBride & Collier in that they impinge upon their rights of free speech. See *Matter of Smith*, 21 F.3d 660 (5th Cir. 1994) (Bankruptcy courts cannot use their equity power to negate substantive rights). First Amendment rights are substantive rights. *Micone v. Carey*, 203 Fed.Appx. 23 (9th Cir. 2006), at p. 24. Plaintiffs have at least shown a likelihood of success in challenging the Standing Orders on these grounds.

Plaintiffs are suffering irreparable harm. "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, at 373-374 (1976), citing *New York Times Co. v. United States*, 403 U.S. 713, 91 S.Ct. 2140, 29 L.Ed.2d 822 (1971); and see *Paulsen v. County of Nassau*, 925 F.2d 65 (2nd Cir. 1991). Injunctive relief is appropriate when First Amendment interests are either threatened or in fact being impaired at the time relief sought. *Elrod* at p. 374; and *National Treasury Employees Union v. U.S.* 927 F.2d 1253(D.C. Cir. 1991).

There is no harm to any other party to be done by issuing a stay of the Standing Orders. If Judge Callaway's Standing Orders are suspended pending this resolution of the Complaint, he will not suffer. Also the public will be served by a stay. Silencing even commercial speech harms the public as the public has the right to know what services are available and on what terms. This was specifically noted by the court in *Virginia Pharmacy Bd. v. Virginia Consumer Council*, 425 U.S.

748 (1976) in allowing the advertising of prescription drug prices.  The public will also be served by there not being numerous additional appeals every month from the Chapter 13 Bankruptcy cases which McBride & Collier file.

It is well settled that the issuance of a preliminary injunction freezes the status quo and is intended to "preserve the relative positions of the parties until a trial on the merits can be held." *University of Texas vs. Camenisch*, 451 U.S. 390, 395 (1981).  Preliminary injunctions commonly favor the status quo and seek to maintain things in their initial condition, so far as possible, until a full hearing permits final relief to be ordered.  *Id.; Opticians Association of America vs. Independent Opticians of America*, 920 F.2nd 187, 197 (3rd. Cir. 1990) (citations omitted), *United States vs. Hayes*, 515 U.S. 737, 742-43(1995) and *Lujan vs. Defenders of Wildlife*, 540 U.S., 560-561(1992).

In the case at bar, the issuance of a preliminary injunction will preserve not only the status quo, but will serve to mitigate any monetary damages that McBride & Collier may suffer under the Standings Orders entered by Judge Callaway.  Moreover, the damage to their First Amendment rights has been deemed *per se* irreparable harm under the applicable jurisprudence.  Injunctive relief will hold the damage to their First Amendment rights at bay.

### IV.  Conclusion

In the final analysis, Judge Little's opinion in *In re Standing Order with Reasons Regarding Objections to the discharge under 11 U.S.C. § 727 and Proported Settlement of Actions*, 272 B.R. 917(BKRtcy. W.D. La.2001) provides more than adequate authority for this Court to review Judge Callaway's standing orders, which, in effect, are orders of this Court.  Moreover, this Court has already exercised its jurisdiction denying the writ f prohibition as to the first standing order and taking under advisement the second.  For the foregoing reasons, the Motion to Dismiss filed by the United States must be denied.

Alexandria, Louisiana, this 29th day of January, 2010.

Respectfully submitted,

**GOLD WEEMS BRUSER SUES & RUNDELL**

By:      s/Bradley L. Drell

Bradley L. Drell (Bar Roll # 24387)
Amanda W. Barnett (Bar Roll # 19225)
Post Office Box 6118
Alexandria, Louisiana 71307-6118
Telephone: (318) 445-6471
Facsimile: (318) 445-6476

**ATTORNEYS FOR MCBRIDE & COLLIER, ATTORNEYS AT LAW**

**CERTIFICATE OF SERVICE**

This is to certify that a copy of the ***Memorandum in Opposition to Motion to Dismiss*** was

sent to Albert G. "Alec" Alexander, III, U S Attorneys Office, 800 Lafayette Street, Ste 2200,

Lafayette, LA 70501  via United States Mail.

Alexandria, Louisiana, this 29th day of January, 2010.


        /s/Bradley L. Drell
                        OF COUNSEL